**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

JOHN PAUL COX, JR.                    CIVIL ACTION

VERSUS                                 NO. 12-306-SDD-SCR

COLUMBIA CASUALTY COMPANY,
ET AL.

## RULING

       This matter is before the Court on the *Motion for Partial Summary Judgment Against Defendant Joel Arnold* filed by the Plaintiff, John Paul Cox, Jr.,[1] the *Motion for Partial Summary Judgment* by Defendant, Deputy Joel Arnold ("Arnold"),[2] and a *Motion for Partial Summary Judgment* by Defendants, Former Sheriff Willie Graves ("Graves") and Sheriff Jason Ard ("Ard").[3]  All parties have filed *Oppositions*[4] to the opposing parties' motions. For the reasons which follow, the Court finds that Plaintiff's motion should be denied, and Defendants' motions should be granted in part and denied in part.

## I.    FACTUAL BACKGROUND

       The lawsuit arises out of an incident which occurred on May 24, 2011.  On that date, at approximately 1:30 a.m., former Livingston Parish Deputy Joel Arnold was sitting in his parked patrol car on the property of John's Grocery & Hardware in Walker, Louisiana,

---

[1] Rec. Doc. No. 18.

[2] Rec. Doc. No. 21.

[3] Rec. Doc. No. 22.

[4] Rec. Doc. Nos. 25 & 30.

which is owned by Plaintiff's father; Plaintiff also lives behind this store. Plaintiff allegedly drove from his residence to the store on an All Terrain Vehicle (ATV) to inquire why a police officer was parked at his father's store. Plaintiff alleges that when he approached Arnold's police car, Arnold yelled at Cox, "May I help you?" followed by "Do you want to go to jail?" Plaintiff alleges Arnold then ordered him off his ATV as Arnold exited his police car.

Plaintiff claims that as soon as he complied and got off his ATV, Arnold ordered him to place his hands on the police car while Arnold searched Plaintiff. Plaintiff claims he asked Arnold if he had a search warrant, to which Arnold replied in the negative but then ordered Plaintiff to put his hands behind his back. Plaintiff alleges Arnold grabbed his right arm and pulled it up behind his neck "with great force."[5] Plaintiff was then handcuffed and Arnold allegedly used his own body to repeatedly throw Plaintiff against the police car. Plaintiff alleges Arnold instructed him to lie face down on the ground, and Arnold pushed him to the ground when he attempted to comply. Plaintiff further claims that once on the ground, Arnold began to knee Plaintiff in the back. Subsequently, Arnold ordered Plaintiff to get up and into the back seat of the police car.

At this time, two other Livingston Parish Sheriff's cars arrived on the scene followed shortly by Plaintiff's ex-wife, Jennifer Cox ("Jennifer"). When Jennifer asked Arnold where the Plaintiff was and Arnold responded that he was in the police car, she asked if Plaintiff had done something wrong. Arnold allegedly responded that Plaintiff "seemed to think I need his permission to be on his property."[6] After conferring with the other deputies, Arnold

---

[5] Rec. Doc. No. 1, ¶ 16.

[6] *Id.*, ¶ 26.

Doc 596                                           2

instructed Plaintiff to get out of the car, uncuffed him, and allowed him to leave.

In his deposition, Plaintiff testified that he believed Arnold's conduct was in retaliation for Plaintiff having previously reported a complaint against Arnold to his superior.[7] Plaintiff contends that approximately one month before the incident in the parking lot, Arnold had arrested Jennifer for an outstanding warrant on a traffic violation. As Arnold transported Jennifer to the station, he allegedly questioned her about Plaintiff using the store as a front to sell drugs.[8] Upon learning of this accusation, Plaintiff called the Livingston Parish Sheriff's Office and reported his complaint regarding Arnold's comments to Arnold's supervisor Chad McGovern. McGovern allegedly reported back to Plaintiff that Arnold had been reprimanded for the comments and it would not happen again.[9]

On the night of the incident in question, Plaintiff contends Jennifer, who still resides with Plaintiff, called Plaintiff who was working in his shop and told him that a police officer was parked in the driveway shining a spotlight on the house.[10] Plaintiff claims this is why he got on his ATV and approached Arnold's car.[11] After the situation became heated, Plaintiff alleges that while Arnold was patting him down and removing things from Plaintiff's pockets, he asked Arnold if he had a search warrant. Plaintiff claims Arnold responded, "I don't need no f***ing search warrant," to which Plaintiff responded, "Well, we'll have to

---

[7] Rec. Doc. No. 30-10, Deposition of John Paul Cox, Jr., p. 33-34.

[8] *Id.* at p. 35.

[9] *Id.* at p. 36.

[10] *Id.* at p. 53.

[11] *Id.* at p. 54.

Doc 596                                         3

see what Chad McGovern's got to say about this sh** in the morning."[12]  Plaintiff claims Arnold then stated: "Oh, you're that son of a bitch that called in on me a month ago."[13]  When Arnold allegedly kicked Plaintiff, Plaintiff claims he also said, "Go tell Chad McGovern that too, or go tell Chad McGovern now."[14]  After Plaintiff was placed face down on the ground, he alleges Arnold repeatedly kneed him in the back while stating: "Go call Chad McGovern now, mother f***er.  You want me to call him for you?  You want to use my phone?  Call him now, mother f***er."[15]

   The Defendants paint a very different picture of the events of May 24, 2011.  Arnold claims that, at approximately 1:30 a.m. on this date, he was conducting regular patrol on Highway 447 in Livingston Parish, Louisiana at the direction of his supervisor based on several reported burglaries in the area.  Arnold claims he pulled into the parking lot of John's Grocery & Hardware to fill out a report.  Arnold alleges that Plaintiff approached his vehicle, and because of the time of night, he shined his patrol unit spotlight on the Plaintiff, who then yelled at Arnold to get the light out of his eyes.  Plaintiff allegedly asked Arnold what he was doing on his (Plaintiff's) property.  Arnold contends he was concerned for his own safety considering the time of night, so he asked the Plaintiff to get off his ATV, but Plaintiff did not initially comply.  Arnold claims that after several more requests, Plaintiff complied and Arnold then had Plaintiff place his hands on the car in order to conduct a

---

[12] *Id.* at p. 64, lines 20-24.

[13] *Id.* at p. 68.

[14] *Id.* at p. 69.

[15] *Id.* at p. 70.

legal pat down to ensure Arnold's safety. During this pat down, Arnold contends Plaintiff became "irate" about deputies being on his property.[16] Arnold claims that because of the time of night and Plaintiff's "agitated state," he decided to place Plaintiff in handcuffs to "complete the safety pat down and figure out what was going on."[17]

Arnold further contends Plaintiff refused to present his hands for handcuffing, which required Arnold to "scissor" him to the ground to handcuff Plaintiff.[18] Arnold contends that at this point, Plaintiff stopped resisting and became compliant for the pat down, handcuffing, and being placed in the back of Arnold's police car. Upon arrival of the other Livingston Parish deputies, Arnold contends it was decided to release Plaintiff with a warning to avoid creating a disturbance. Both parties appear to agree that upon letting Plaintiff exit the car, Arnold stated to Plaintiff: "Well I guess our tempers met."[19]

Plaintiff alleges that as a result of the beating by Arnold, he has suffered severe physical and emotional injuries and damages. Plaintiff was never charged with a crime. Plaintiff claims he provided then-Sheriff Graves with a video recording of this incident taken by the surveillance camera at John's Grocery & Hardware. After an alleged investigation of the matter, Plaintiff contends Graves took no disciplinary action against Arnold but rather "ratified and endorsed Arnold's conduct," finding Arnold's only mistake was not actually

---

[16] Rec. Doc. No. 21-4, Deposition of Joel Arnold (identified as Exhibit A), p. 16, line 19.

[17] Rec. Doc. No. 21-1, p. 2.

[18] Rec. Doc. No. 21-4, Deposition of Joel Arnold, p. 17, line 12.

[19] Rec. Doc. No. 21-1, p. 2, citing Rec. Doc. No. 21-5 (identified as Exhibit B), Deposition of John Paul Cox, Jr., p. 75, lines 17-18.

Case 3:12-cv-00306-SDD-SCR    Document 42    01/03/14    Page 5 of 50

arresting Plaintiff.[20]

Plaintiff argues that at the time of Arnold's hire in 2007, Graves was aware of Arnold's serious misconduct as a deputy in the Lee County Sheriff's Office in Florida. Plaintiff further alleges that, both before and after the incident involved in this lawsuit, Arnold engaged in other similar acts of misconduct and violence that Graves "ratified, endorsed, and/or ignored,"[21] which have resulted in other pending lawsuits against Arnold and Graves. Plaintiff contends a fifth incident prompted Arnold's resignation from the Livingston Parish Sheriff's Office ("LPSO").

Plaintiff filed this lawsuit against Joel Arnold, former Sheriff Willie Graves, and Columbia Casualty Company as insurer of the Defendants. Plaintiff's claims against Arnold include: battery, assault, false arrest, false imprisonment, intentional infliction of emotional distress, unlawful seizure, cruel treatment, failing to offer or provide medical attention, violation of the Constitution and other laws of the United States and State of Louisiana, excessive use of force, unreasonable use of force, deliberate indifference to the rights, safety, and dignity of Plaintiff, and all other acts and omissions shown at trial. Plaintiff claims that Sheriff Graves, sued individually and in his official capacity as Livingston Parish Sheriff, is liable under the doctrine of *respondeat superior* for all of Plaintiff's claims against Arnold. Plaintiff also claims that Graves' pre-employment screening of Arnold was "inadequate and reckless,"[22] and once hired, Arnold was not properly trained or supervised,

---

[20] *Id.*, ¶¶ 34 & 35.

[21] *Id.*, ¶ 37.

[22] *Id.*, ¶ 40.

Case 3:12-cv-00306-SDD-SCR   Document 42   01/03/14   Page 6 of 50

especially in light of Graves' knowledge of Arnold's prior history.  Further, Plaintiff claims Graves is liable for his deliberate indifference to the acts of Arnold, the safety and rights of Plaintiff, and whether Arnold was adequately trained, supervised, or controlled.

Plaintiff has moved for partial summary judgment against Arnold on his claims for battery and false arrest/false imprisonment under Louisiana state law.  Defendants Arnold, Graves, and Ard have also moved for partial summary judgment on all of Plaintiff's federal and state claims, and have asserted the defense of qualified immunity.[23]

## II.    LAW AND ANALYSIS

### A.    Summary Judgment Standard

Summary judgment should be granted if the record, taken as a whole, "together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[24]  The Supreme Court has interpreted the plain language of Rule 56© to mandate "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[25]  A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not

---

[23] Defendant Columbia Casualty Company has adopted the *Motion for Summary Judgment* filed by Defendant Joel Arnold.  Rec. Doc. Nos. 27 & 28.

[24] Fed. R. Civ. P. 56(c);  *New York Life Ins. Co. v. Travelers Ins. Co.*, 92 F.3d 336, 338 (5th Cir. 1996);  *Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 758 (5th Cir. 1996).

[25] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).  *See also Gunaca v. Texas*, 65 F.3d 467, 469 (5th Cir. 1995).

Case 3:12-cv-00306-SDD-SCR    Document 42    01/03/14    Page 7 of 50

negate the elements of the nonmovant's case."[26]  If the moving party "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response."[27]

If the moving party meets this burden, Rule 56 (c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial.[28]  The nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence.[29] Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."[30]  The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[31]  Unless there is sufficient evidence for a jury to return a verdict in the nonmovant's favor, there is no genuine issue for trial.[32]

### B.    Plaintiff's *Motion for Partial Summary Judgment*

---

[26] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*) (*quoting Celotex*, 477 U.S. at 323-25, 106 S.Ct. at 2552).

[27] *Id.* at 1075.

[28] *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1046-47 (5th Cir. 1996).

[29] *Little*, 37 F.3d at 1075;  *Wallace*, 80 F.3d at 1047.

[30] *Wallace*, 80 F.3d at 1048 (*quoting Little*, 37 F.3d at 1075).  *See also S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 494 (5th Cir. 1996).

[31] *McCallum Highlands v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995), *as revised on denial of rehearing*, 70 F.3d 26 (5th Cir. 1995).

[32] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-51, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

The Plaintiff has moved for partial summary judgment against Defendant Arnold on his claims of battery and false arrest/false imprisonment.

Under Louisiana law, the tort of battery, when raised against a law enforcement officer acting in the course of employment, requires a showing that the law enforcement officer acted with unreasonable or excessive force.[33]  While the law provides that reasonable force may be used to effect a lawful arrest, courts have also held that a citizen has the right to use reasonable force to resist an unlawful arrest.[34]  "Whether the force used is reasonable depends upon the totality of the facts and circumstances in each case,"[35] and factors to consider are: "(1) the known character of the arrestee, (2) the risks and dangers faced by the officers, (3) the nature of the offense involved, (4) the chance of the arrestee's escape if the particular means are not employed, (5) the existence of alternative methods of arrest, (6) the physical size, strength, and weaponry of the officers compared to the arrestee, and (7) the exigencies of the moment."[36]

As to the claim of false arrest/false imprisonment, under Louisiana law, "[f]alse arrest and imprisonment occur when one arrests and restrains another against his will without a warrant or other statutory authority.  Simply stated, it is restraint without color of legal

---

[33] *Gerard v. Parish of Jefferson*, 424 So.2d 440, 444 (La.Ct.App.1982) (citing *Kyle v. City of New Orleans*, 353 So.2d 969, 972 (La.1977); *see also Taylor v. United States*, 1991 WL 280066 (E.D.La. Dec.19, 1991) ("Under Louisiana law, in the absence of the use of excessive force, a law enforcement officer cannot be held liable for assault and battery if the assault and battery occurred during a lawful arrest.").

[34] *State v. Ceaser*, 2002-3021 (La. 10/21/03), 859 So.2d 639;  *White v. Morris*, 345 So.2d 461 (La. 1977); *City of Monroe v. Ducas*, 203 La. 974, 14 So.2d 781 (1943).

[35] *Kyle*, 353 So.2d at 973.

[36] *Id.* at 971 (citations omitted).

Case 3:12-cv-00306-SDD-SCR   Document 42   01/03/14   Page 9 of 50

authority."[37]   "[I]f police officers act pursuant to statutory authority in arresting and incarcerating a citizen, they are not liable for damages for false arrest and imprisonment."[38] Louisiana Code of Criminal Procedure article 213 provides that a law enforcement officer may arrest a person without a warrant when the person to be arrested "has committed an offense in his presence" or when that officer has "reason to believe that the person to be arrested has committed an offense."  Louisiana Code of Criminal Procedure article 215.1 provides, in pertinent part, that "[a] law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense" and if in making such a stop the officer "reasonably suspects that he is in danger, he may frisk the outer clothing of such person for a dangerous weapon."

Plaintiff contends he committed no crime and was not suspected of any crime when the incident with Deputy Arnold took place.  Plaintiff further contends Arnold had no probable cause or reasonable suspicion that Plaintiff had committed a crime and that, at the time Arnold was on Plaintiff's property, he was not investigating a crime but completing paperwork.  Thus, Plaintiff argues he was never an "arrestee" in any sense of the word other than being a victim of false arrest, and Arnold had no right to place a hand on Plaintiff, much less use the force taken.  Plaintiff claims that, because Arnold admitted that he did not suspect Plaintiff of committing a crime and never charged Plaintiff with resisting

---

[37] *Id.,* citing *Barfield v. Marron*, 222 La. 210, 62 So.2d 276 (1952); *De Bouchel v. Koss Const. Co., Inc.*, 177 La. 841, 149 So. 496 (1933); *Tillman v. Holsum Bakeries, Inc.*, La.App., 244 So.2d 681 (1971), *writ refused,* La., 258 La. 352, 246 So.2d 199 (1971).

[38] *Id.*, citing *Martin v. Magee,* 182 La. 263, 161 So. 604 (1935); *Cerna v. Rhodes*, La.App., 341 So.2d 1157 (1977), *writ refused*, La., 343 So.2d 1067 (1977); 35 C.J.S. False Imprisonment s 22, p. 649, 650.

Case 3:12-cv-00306-SDD-SCR   Document 42   01/03/14   Page 10 of 50

arrest or resisting an officer, there was no justification for Arnold to use any amount of force against the Plaintiff. Thus, Plaintiff contends he is entitled to partial summary judgment on his claims of battery and false arrest/imprisonment.

Arnold opposes Plaintiff's motion, arguing that the question is not whether he made harmful or offensive contact with Plaintiff, but whether the force used was "reasonable" under the circumstances. Arnold refers to Plaintiff's own testimony that he initially refused to put his hands behind his back for handcuffing to support this use of allegedly minimal force. Arnold contends Plaintiff's lack of cooperation with his requests rendered the minimal force used to ensure his safety reasonable in light of the circumstances and did not constitute battery.

Arnold further contends Plaintiff cannot satisfy his burden of proving that his "brief detention" was unlawful. Arnold contends neither placing Plaintiff in the back of the car nor deciding not to charge him with a crime was in any way unlawful. Arnold claims the brief detention only required "reasonable suspicion," and Plaintiff's lack of cooperation with Arnold's initial commands constituted such. Arnold contends that all actions taken by him were reasonable in light of the time of night, the burglaries in the area, and Plaintiff's alleged aggravated demeanor.

The Court finds that resolving these issues would require fact-finding and weighing credibility which is improper for the Court at the summary judgment stage.[39] Because this dispute turns largely on credibility determinations, the Court cannot hold as a matter of law

---

[39] The Court cannot make credibility determinations or weigh the evidence when deciding a summary judgment motion. *See Harvill v. Westward Communications, L.L.C.*, 433 F.3d 428, 436 (5th Cir. 2005).

that there are no genuine issues of material fact concerning whether Arnold committed the state law torts of battery and false arrest/imprisonment upon Plaintiff. Accordingly, Plaintiff's partial motion for summary judgment is DENIED.

### C.    *Motion for Partial Summary Judgment* by Defendant Joel Arnold

Deputy Arnold has also moved for partial summary judgment on the basis that Plaintiff has failed to satisfy his burden of proof on his claims. Arnold also moves for summary judgment asserting that he is entitled to the defense of qualified immunity for his actions on May 24, 2011 relating to unlawful seizure/arrest and excessive force under Section 1983. For the following reasons, Arnold's motion is GRANTED in part, and DENIED in part.

### 1.    Official Capacity Claims

Plaintiff has made no allegation that Arnold was acting as a final decision making authority for the LPSO. As such, the official capacity claims against Arnold must be dismissed.[40]  "[S]uits against police officers in their official capacity are basically suits against the municipality."[41]  Because Plaintiff's suit against the Sheriff is a suit against the municipality, he cannot also sue Deputy Arnold in his official capacity as an employee of the municipality. "Suing a party in his official capacity under Section 1983 is duplicative of an action against the municipality which the official serves as an agent."[42]  Accordingly, the

---

[40] *See Causey v. Parish of Tangipahoa*, 167 F.Supp.2d 898 (E.D. La. 2001)(citing *Turner v. Houma Municipal Fire and Police Civil Service Board*, 229 F.3d 478 (5th Cir. 2000)).

[41] *Daniel v. Compass*, 212 F. App'x 262, 265 (5th Cir. 2006); *see also Brumfield v. Hollins*, 551 F.3d 322, 331 n. 9 (5th Cir. 2008).

[42] *Terry v. City of New Orleans*, 523 F.Supp.2d 486, 492 (E.D. La. 2007).

Court GRANTS summary judgment dismissal of the Plaintiff's official capacity claims against Arnold.

## 2. Unlawful Seizure and Detention Claims

Defendant's move for summary dismissal of the plaintiff's claims of unlawful seizure and detention arguing that the Plaintiff lacks sufficient evidence to prove the existence of one or more essential elements of his case.[43]

Regarding the claim of unlawful seizure or detention, the law provides that "[a] police officer may detain an individual for a short period of time if the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot, even if the officer lacks evidence rising to the level of probable cause."[44] To state a claim for unlawful detention, a plaintiff must allege: (1) a detention occurred; and (2) the detention was not based on reasonable suspicion supported by articulable facts that criminal activity was occurring.[45]

*Terry v. Ohio*[46] allows brief investigatory stops based on reasonable suspicion. However, "it is clear that a detention of significant length may transform an investigative

_____

[43] Rec. Doc. 21-1.

[44] *Coons v. Lain*, No. 07-40819, 277 Fed. App'x 467, 470, 2008 WL 1983580 (5th Cir. May 8, 2008)(citing *Michigan v. Summers*, 452 U.S. 692, 699, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981); *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

[45] *Id.*, citing *Terry*, 392 U.S. at 30, 88 S.Ct. 1868.

[46] *Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 18968 (1967).*

detention in to an arrest.[47] The investigative stop can 'last no longer than is necessary to effectuate the purpose of the stop.'"[48] Applying this rule, the Fifth Circuit has held that handcuffing and placing a detainee in the back of a police car when there is no indication that the police were investigating the detainee for suspicion of a crime is a seizure requiring probable cause, not reasonable suspicion.[49]

In this case, there is no doubt that a detention of Plaintiff occurred. However, the circumstances surrounding the nature and extent of the detention, which determine whether the Plaintiff's seizure required reasonable suspicion or probable cause are disputed. Likewise, the facts which would support Deputy Arnold's contention that he had both probable cause to arrest and reasonable suspicion to detain Plaintiff are vigorously disputed. Material issues of fact as to probable cause and reasonable suspicion remain, therefor summary judgment is DENIED on the unlawful seizure and detention claims.

---

[47] *Massey v. Wharton*, No. 11-60693, 477 F. App'x 256, 2012 WL 2004968 (5th Cir. June 5, 2012) *citing, United States v. Shabazz*, 993F.2d 431, 437 (5th Cir. 1993)("We recognize that a detention may be of excessively long duration even though the officers have not completed and continue to pursue investigation of the matters justifying its initiation.... A prolonged investigative detention may be tantamount to a de facto arrest, a more intrusive custodial state which must be based upon probable cause rather than reasonable suspicion." (internal citations omitted)).

[48] *Id.*, quoting *Florida v. Royer*, 460 U.S. 491, 500, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983).

[49] *Id.* (*See Freeman v. Gore*, 483 F.3d 404, 413 (5th Cir. 2007)(holding that the plaintiff had been arrested, not merely detained, when the officer threatened the plaintiff with arrest, the plaintiff invited arrest, and the officer handcuffed her and put her in the back of a police car for thirty to forty-five minutes).

### 3.   <u>Excessive Force Claim</u>

Defendant's move for summary dismissal of the plaintiff's 42 USC 1983 claims of excessive force again arguing that the Plaintiff lacks sufficient evidence to prove the existence of one or more essential elements of his case.[50]

An excessive force claim under Section 1983 is "separate and distinct from" a claim for unlawful arrest (or detention) and must, therefore, be analyzed without regard to whether the arrest/detention was justified,[51] although the evidence may overlap.[52] To prove a claim for excessive force, a plaintiff "must show: (1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable."[53] Factors integral to the analysis of reasonableness include: "(1) the extent of the injury suffered; (2) the need for the application of force; (3) the relationship between the need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response."[54]

### a.   **Injury**

Arnold contends Plaintiff cannot establish the first element: that he suffered an injury

---

[50] Rec. Doc. 21-1.

[51] *Freeman v. Gore*, 483 F.3d 404, 417 (5th Cir. 2007).

[52] *Cortez v. McCauley*, 478 F.3d 1108, 1127 (10th Cir. 2007).

[53] *Elizondo v. Green*, 671 F.3d 506, 510 (5th Cir. 2012)(quoting *Collier v. Montgomery*, 569 F.3d 214, 218 (5th Cir. 2009)(internal quotation marks omitted)).

[54] *Keele v. Leyva*, No. 02-5104, 69 F. App'x 659, 2003 WL 21356063 at *1 (5th Cir. May 30, 2003)(citing *Hudson v. McMillian*, 503 U.S. 1, 6-7, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992)).

from the alleged use of excessive force. Arnold contends Plaintiff has not sufficiently pled injury by alleging he "suffered physical and emotional injuries and damages."[55] Plaintiff responds that he has sufficiently pled "at least some form of injury," and has presented medical evidence from a psychiatrist regarding alleged psychological harm. Plaintiff further argues Arnold's arguments go to the weight of Plaintiff's evidence and are questions for the jury.

It is clear that "[t]he injury must be more than a *de minimus* physical injury, but need not be significant or serious."[56] Also, "[t]o meet the injury element, '[t]he injury must be more than a *de minimus* injury and must be evaluated in the context in which the force was deployed.'"[57] The Fifth Circuit has held that, in determining whether a Fourth Amendment injury is more than *de minimus*, "a court must 'look to the context in which that force was deployed[] ... [as] related to the amount of force that is constitutionally permissible under the circumstances. What constitutes an injury in an excessive force claim is therefore subjective - it is defined entirely by the context in which the injury arises.'"[58] Moreover, "'physical pain' may, depending on the context in which the injury arose, constitute 'bodily injury' sufficient to overcome the *de minimus* threshold."[59] The Fifth Circuit has also clearly

---

[55] Rec. Doc. No. 21-1, p. 8, quoting Rec. Doc. No. 1, ¶ 44.

[56] *Keele*, 69 F. App'x 659 at *2, citing *Gomez v. Chandler*, 163 F.3d 921, 924 (5th Cir. 1999).

[57] *Namer v. Gentrey*, 273 F.3d 392, 2001 WL 1013077 at *3 (5th Cir. 2001)(citing *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001))(emphasis added).

[58] *US v. Diaz*, No. 11-51020, 498 F. App'x 407, 411, 2012 WL 5910944 (5th Cir. Nov. 27, 2012)(quoting *US v. Brugman*, 364 F.3d 613, 618 (5th Cir. 2004)(internal quotation marks and citation omitted).

[59] *Id.* at 412.

Doc 596                                             16

held that "[p]urely psychological injury can serve as a basis for liability under Section 1983."[60]

In *United States v. Brugman*, the defendant willfully kicked and struck Miguel Jiminez-Saldana, who was in a group of ten individuals caught attempting to enter the United States illegally, even though, at the time, Jiminez-Saldana was no longer fleeing or actively resisting the authority of the officers present.[61] Although there was no visible manifestation of injury, Jiminez-Saldana testified that upon being kicked, he felt pain and lost his breath, and felt residual pain for approximately three days following the incident.[62] Further, an officer testified that he heard Jiminez-Saldana make a "grunting noise" while being kicked and struck.[63] The Fifth Circuit held that this was sufficient to clear the *de minimus* threshold "even though there was no visible manifestation of injury."[64]

It is clear to the Court that, when applying all of the relevant factors to this inquiry, Plaintiff has sufficiently pled injury under the requirements for an excessive force claim. Plaintiff has alleged that Arnold grabbed his arm and pulled it behind his neck "with great force,"[65] used his body to "thrust" Plaintiff repeatedly against his police car,[66] pushed

---

[60] *Mesa v. Prejean*, 543 F.3d 264, 272 (5th Cir. 2008)(citing *Tarver v. City of Edna*, 410 F.3d 745 (5th Cir. 2005)).

[61] *Brugman*, 364 F.3d at 614, 619.

[62] *Id.* at 619.

[63] *Id.*

[64] *Diaz*, 498 F.App'x at 512, citing *Brugman*, 364 F.3d at 619.

[65] Rec. Doc. No. 1., ¶ 16.

[66] *Id.* at ¶ 17.

Plaintiff to the ground,[67] and kicked and repeatedly kneed Plaintiff in the back while he was handcuffed and face down on the ground.[68] Arnold would have the Court look only at Plaintiff's alleged injuries without analyzing those injuries in the context of Arnold's alleged conduct and the alleged need for the force used. The Court must resolve this issue in the light most favorable to the Plaintiff, and because Plaintiff's version of events could reasonably be believed by a jury, the Court cannot say that he has not alleged an injury, physical and/or psychological, considering the context in which the force was applied. The Court agrees that it is for the jury to determine to what extent Plaintiff was injured and whether the psychological injury Plaintiff alleges was diagnosed at a time too far removed to be connected to the incident.

### b. Cause and Reasonableness

As to the second prong, Plaintiff has clearly alleged that his injury was caused by Arnold's use of force.

The third prong requires that Plaintiff show that the use of force was "clearly unreasonable." Defendant Arnold moves for summary judgment arguing that his actions do not rise to the level of a constitutional violation and further that Arnold is entitled to the defense of qualified immunity (discussed *infra*).

In assessing whether the force used was reasonable, the Court must assess the totality of the circumstances, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others , and whether he

---

[67] *Id.* at ¶ 19.

[68] *Id.* at ¶ 20; Deposition of Cox, pp. 69-70.

Doc 596                          18

is actively resisting arrest or attempting to evade arrest by flight."[69] These factors were clearly established at the time of the events here. There is no allegation that the Plaintiff was charged with a crime. There is no allegation that the Plaintiff was attempting to flee or evade arrest by flight. There is a dispute of fact as to whether the plaintiff offered resistance to what the defendant characterizes as a reasonable suspicion safety stop.[70] For these reasons, Arnold's Summary Judgment Motion to Dismiss the Plaintiff's Excessive Force claims is DENIED.

### 4. Qualified Immunity

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"[71] "The doctrine of qualified immunity seeks to strike a balance between competing social objectives, providing breathing space for the vigorous exercise of official authority, while at the same time allowing a possibility of redress for victims of officials' abuses."[72]  In determining whether an official is entitled to qualified immunity "[the] court must decide whether [the] plaintiff's allegation, if true, establishes a violation of a clearly established right. . . [I]f the plaintiff has alleged a violation, the court must decide whether the conduct was objectively reasonable

---

[69] *Massey v. Wharton*, 477 F. App'x 256, 262 (5th Cir. 2012).

[70] As discussed *infra* there are material facts in dispute as to whether this was a reasonable suspicion stop or an arrest requiring probable cause.

[71] *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009)(quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)).

[72] *Hernandez ex rel. Hernandez v. Texas Dep't of Protective & Regulatory Servs.,* 380 F.3d 872, 879 (5th Cir. 2004).

Case 3:12-cv-00306-SDD-SCR   Document 42   01/03/14   Page 19 of 50

in light of clearly established law at the time of the incident. Even if the government official's conduct violates a clearly established right, the official is nonetheless entitled to qualified immunity if his conduct was objectively reasonable." [73] The court "may conduct this inquiry in either sequence."[74]

It is clearly established that persons are protected from unreasonable search and seizure by the Fourth Amendment. The Fourth Amendment right to be free from excessive force incident to a law enforcement search and seizure is clearly established.[75] It is likewise clearly established that the nature and extent of force that an officer may use when making a probable cause arrest or a reasonable suspicion detention is dependant on the totality of the circumstances. [76] In this case, the circumstances leading to the detention/ arrest of the Plaintiff are hotly disputed. It is precisely those the factual circumstances which are material to the qualified immunity determination. On the one hand, plaintiff maintains that he complied with Arnold's command that he get off his ATV. Plaintiff asserts that upon disembarking from his ATV Arnold ordered plaintiff to place his hands on the car and searched him, including a search of his pockets. Plaintiff alleges that Arnold forcefully and repeatedly shoved his body against the plaintiff. Plaintiff alleges that Arnold handcuffed

---

[73]*Hernandez ex rel. Hernandez v. Texas Dep't of Protective & Regulatory Servs.*, 380 F.3d 872, 879 (5th Cir. 2004), internal citations omitted.

[74] *Pearson*, 555 U.S. at 236, 129 S.Ct. 808.

[75] *Deville v. Marcantel*, 567 F.3d 156, 169 (5th Cir.2009); *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012).

[76] *Id.* See also, *Bush v. Strain*, 513 F.3d 492, 502 (5th Cir. 2008)(holding that the law was clearly established prior to the events at issue here that "the permissible degree of force depends on the severity of the crime at issue, whether the suspect posed a threat to the officer's safety, and whether the suspect was resisting arrest or attempting to flee".

Case 3:12-cv-00306-SDD-SCR   Document 42   01/03/14   Page 20 of 50

him, kicked him, forced him to lie face down on the ground, kneed him in the back while on the ground and finally detained him in the back of Arnold's squad car until other officers arrived at which time the Plaintiff was released without any charges. On the other hand, Arnold contends that the Plaintiff failed to comply with his request to get off his ATV. That upon conducting a "safety pat down" the Plaintiff became "irate" and "agitated" and that as a result of the Plaintiff's non-compliance he was required to "scissor" Plaintiff to the ground. With the backdrop of these highly contested facts, the Court is unable make a summary judgment that Officer Arnold's conduct was objectively reasonable in light of clearly established law.

In Massey v. Wharton[77] the Fifth Circuit was presented with a case arising under 42 U.S.C. § 1983 for alleged unlawful search and seizure. Like this case, the Massey case also presented drastically different versions of the events. In Massey, the Fifth Circuit stated that "it is clear that a detention of significant length may transform an investigative detention into an arrest."[78] The investigative stop can "last no longer than is necessary to effectuate the purpose of the stop."[79] Even though Arnold contends that the events were a reasonable suspicion stop,  an argument can be made that Arnold's detention of the

---

[77] Massey v. Wharton, No. 11-60693, 477 F. App'x 256, 2012 WL 2004968 (5th Cir. June 5, 2012).

[78] Massey v. Wharton, 477 F. App'x 256, 261 (5th Cir. 2012).

[79] Massey v. Wharton, 477 F. App'x 256, 261 (5th Cir. 2012) citing, United States v. Shabazz, 993 F.2d 431, 437 (5th Cir.1993) ("We recognize that a detention may be of excessively long duration even though the officers have not completed and continue to pursue investigation of the matters justifying its initiation.... A prolonged investigative detention may be tantamount to a de facto arrest, a more intrusive custodial state which must be based upon probable cause rather than mere reasonable suspicion." Citing also, Florida v Royer, 460 US 491,500 (1983).

Plaintiff in the squad car rose to the level of an arrest requiring probable cause. But even assuming that the seizure arose only to the level of a detention, Arnold must be able to articulate a reasonable suspicion to warrant the detention. "A police officer may conduct a limited search if 'a reasonably prudent [person] in the circumstances would be warranted in the belief that his safety or that of others was in danger."[80]  Whether the seizure in this case required "reasonable suspicion or "probable cause" is a matter of disputed material fact.  Even if the Court were to conclude that the lower standard of "reasonable suspicion" applied in this case, summary judgment on qualified immunity is inappropriate.  Whether there is reasonable suspicion to stop is a question of law. And even though the court will determine at trial as a matter of law whether reasonable suspicion existed, the district court cannot draw conclusions of law from disputed facts at the summary judgment phase.[81]  A defendant's claim to summary judgment on the qualified immunity issue must be denied where, as in this case, "[d]ivergent versions of what happened have been offered by [the parties]."[82] When a genuine dispute as to the material and operative facts of the case exist, summary judgment is inappropriate unless the plaintiff's version of the violations does not implicate clearly established law.[83]

---

[80] *Goodson v. City of Corpus Christi*, 202 F.3d 730, 738 (5th Cir. 2000), quoting *Terry v Ohio*, 392 U.S. at 27, 88 S.Ct.  at 868.

[81] *Goodson v. City of Corpus Christi*, 202 F.3d 730, 739 (5th Cir. 2000), quoting *Johnston v. City of Houston,* 14 F.3d at 1056.

[82] *Id.* at 1058.

[83] *Id.* at 1061, *See also Hart v. O'Brien,* 127 F.3d 424, 432 (5th Cir.1997) ("[W]e will not consider disputed facts in determining whether the officers had, or reasonably believed that they had, probable cause to search Hart's home or to arrest her."); *Mangieri v. Clifton,* 29 F.3d 1012, 1016 n. 6 (5th Cir.1994); *Lampkin v. City of*

The Fifth Circuit instructs that "[t]he reasonableness of an officer's conduct under the Fourth Amendment is often a question that requires the input of a jury. This is not only because the jury must resolve disputed fact issues but also because the use of juries in such cases strengthens our understanding of Fourth Amendment reasonableness."[84] The Circuit Court explained:

> [I]n those cases where the officer's conduct is less clear and an assessment of reasonableness mandates a number of factual inferences, the case falls within the province of a jury. Thus, when determining whether the officer's alleged conduct violated the constitutional right to be free from unreasonable seizures, we must remain mindful of the role that the jury can play in this determination.[85]

The Court finds that an assessment of the reasonableness of Arnold's conduct mandates a number of factual inferences. Applying the law and relevant jurisprudence to the facts of this case, the Court DENIES Arnold's *Motion for Partial Summary Judgment* on the grounds of Qualified Immunity.

For the same reasons, summary judgment is also DENIED on Plaintiff's state law tort claims against Arnold, except as set forth in subsection C.6. below.[86]

### 5. Punitive Damages

In a Section 1983 action, a plaintiff may be awarded punitive damages if "the

_____

*Nacogdoches,* 7 F.3d 430, 435 (5th Cir.1993).

[84] *Id.* at 411.

[85] *Id.*

[86] Plaintiff's state law claims mirror his federal claims under Section 1983. Because there are no material differences in applicable legal standards under state or federal law, the analysis applies to both sets of claims. *Deshotels v. Marshall*, 454 F. App'x 262, 269, 2011 WL (5th Cir. 2011)(citing *Deville v. Mercantel*, 567 F.3d 156, 173 (5th Cir. 2009).

defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."[87]  The latter standard has been further defined as "subjective consciousness of a risk of injury or illegality and a criminal indifference to civil obligations."[88]

Arnold moves for summary judgment on the issue of punitive damages claiming that, because Plaintiff has failed to allege more than a *de minimus* injury, he is not entitled to punitive damages as a matter of law.  Arnold also contends that Plaintiff has not alleged or presented evidence that Arnold's conduct was intentional, malicious, or motivated by evil intent.  As the Court has already held that Plaintiff has sufficiently pled injury under the context of the circumstances, the lack of injury argument is without merit.  The contention that no evil intent or malicious motivation has been alleged is also contrary to the record in this case.  Plaintiff's deposition testimony referenced allegations that Arnold's alleged actions were in retaliation for the complaint Plaintiff had previously made to Arnold's supervisor.  If a jury believes Plaintiff's account of the incident, it could also reasonably conclude that Plaintiff is entitled to punitive damages under applicable law.  Arnold's motion for summary judgment on this claim is DENIED.

### 6.  Failure to Provide Medical Attention and Intentional Infliction of Emotional Distress

Arnold also moves for summary judgment on Plaintiff's claims for failure to offer or

---

[87] *Smith v. Wade*, 461 U.S. 30, 56, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983); *see also Hale v. Fish* 899 F.2d 390, 404 (5th Cir. 1990).

[88] *Williams v. Kaufman County*, 352 F.3d 994, 1015 (5th Cir. 2003)(citations and footnotes omitted).

provide medical attention and his state law claim of intentional infliction of emotional distress. In his *Opposition*, Plaintiff failed to address or counter Arnold's allegations or argument with respect to either of these claims. The law is clear that "[i]f a party fails to assert a legal reason why summary judgment should not be granted, that ground is waived and cannot be considered or raised on appeal."[89] Accordingly, Arnold's motion for summary judgment on these claims is GRANTED. Plaintiff's claims for failure to offer or provide medical treatment and for intentional infliction of emotional distress under Louisiana law are hereby dismissed with prejudice.

### D. *Partial Motion for Summary Judgment* by Defendants Former Sheriff Willie Graves and Sheriff Jason Ard[90]

Former Sheriff Graves has been sued in both his official and individual capacities, and current Sheriff Jason Ard ("Defendants") has been sued in both his official and individual capacities. An official capacity suit is the equivalent of a suit against the entity of which the officer is an agent.[91] Thus, the suit against former Sheriff Graves in his official capacity as the Sheriff of Livingston Parish and Sheriff Ard in his official capacity as the Sheriff of Livingston Parish is essentially a suit against Livingston Parish, a municipality.[92] Plaintiff has alleged that Defendants are liable for the actions of Arnold because they were negligent

---

[89] *Kennan v. Tejada*, 290 F.3d 252, 262 (5th Cir. 2002).

[90] Although Sheriff Jason Ard is not an originally named party to this lawsuit, by operation of Fed. R. Civ. P. 25(d), he was automatically substituted as the proper defendant for claims against the Livingston Parish Sheriff in his official capacity upon his succeeding Sheriff Willie Graves on July 1, 2012.

[91] *Nowell v. Acadian Ambulance Service, et al*, 147 F.Supp.2d 495, 500 (W.D. La. 2001)(internal citations omitted).

[92] See *Jacobs v. West Feliciana Sheriff's Dept.*, 228 F.3d 388, 392 (5th Cir. 2000).

Case 3:12-cv-00306-SDD-SCR   Document 42   01/03/14   Page 25 of 50

in hiring Arnold, failed to adequately train and/or supervise Arnold, and were deliberately indifferent to known and/or obvious consequences of these failures. Defendants move for partial summary judgment on these claims arguing Plaintiff cannot meet the high burden of establishing these claims under federal law.

Defendants note that, by operation of Rule 25(d) of the Federal Rules of Civil Procedure, Sheriff Ard has been automatically substituted as the proper Defendant for claims against the Livingston Parish Sheriff in his official capacity. Thus, the Court agrees that the individual capacity claims remain against former Sheriff Graves, and the official capacity claims are now against Sheriff Ard.

### 1. Failure to Train/Supervise

It is well-established that a municipality is not liable for constitutional violations committed by its employees unless those violations result directly from a municipal custom or policy.[93] Liability under the doctrine of *respondeat superior* is not cognizable in Section 1983 actions.[94] It is, however, "clear that a municipality's policy of failure to train its police officers can rise to § 1983 liability."[95] For purposes of Section 1983, an official policy is a:

> policy statement, ordinance, regulation or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority. Alternatively, official policy is a persistent, widespread practice of city officials or

---

[93] *Sanders-Burns v. City of Plano*, 594 F.3d 366, 380 (5th Cir. 2010), citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); *Conner v. Travis County*, 209 F.3d 794, 796 (5th Cir. 2000).

[94] *Id.* at 380, citing *Cozzo v. Tangipahoa Parish Council-President Gov't*, 279 F.3d 273, 286 (5th Cir. 2002).

[95] *Brown v. Bryan County*, 219 F.3d 450, 456 (5th Cir. 2000).

Case 3:12-cv-00306-SDD-SCR    Document 42    01/03/14    Page 26 of 50

employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Finally, a final decision maker's adoption of a course of action tailored to a particular situation and not intended to control decisions in later situation' [sic] may, in some circumstances, give rise to municipal liability under § 1983.[96]

A sheriff not personally involved in the acts that deprived a plaintiff of his constitutional rights is liable under Section 1983 if: "1) the sheriff failed to train or supervise the officers involved; 2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and 3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights."[97]

The Supreme Court has held that "a municipality can be liable for failure to train its employees when the municipality's failure shows 'a deliberate indifference to the rights of its inhabitants.'"[98] "Deliberate indifference is more than mere negligence."[99] A plaintiff must show that "in light of the duties assigned to specific officers or employees, the need for more or different training is obvious, and the inadequacy so likely to result in violations of constitutional rights, that the policymakers of the city can reasonabl[y] be said to have been deliberately indifferent to the need."[100]

---

[96] *Sanders-Burns*, 594 F.3d at 380-81, quoting *Brown v. Bryan County*, 219 F.3d at 157 (internal citations and quotations omitted).

[97] *Id.* (internal citations omitted).

[98] *Farmer v. Brennan*, 511 U.S. 825, 840, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)(citing *City of Canton*, 489 U.S. at 389).

[99] *Conner*, 209 F.3d at 796.

[100] *City of Canton*, 489 U.S. at 390.

Case 3:12-cv-00306-SDD-SCR   Document 42   01/03/14   Page 27 of 50

A showing of deliberate indifference "is difficult, although not impossible, to base on a single incident."[101]  Claims of inadequate training generally require that the plaintiff demonstrate a pattern.[102]  "Notice of a pattern of similar violations is required."[103]  The prior acts "must be 'fairly similar to what ultimately transpired and, in the case of excessive use of force, that the prior act must have involved injury to a third party.'"[104]  The "single incident exception" is narrow, and to rely on the exception, "'a plaintiff must prove that the highly predictable consequence of a failure to train would result in the specific injury suffered, and that the failure to train represented the moving force behind the constitutional violation.'"[105]

Defendants contend that because there was no underlying violation of constitutional rights, a required element for Section 1983 municipal liability, the Sheriff in his official capacity cannot be held liable.  Defendants also argue that Sheriff Graves cannot be held liable in his individual capacity because he was not "personally involved in the acts causing deprivation of a constitutional right, or a causal connection exists between the act and the alleged constitutional violation."[106]

Defendants also contend that Plaintiff offers only conclusory allegations and

---

[101] *Sanders-Burns*, 594 F.3d at 381, citing *Gabriel v. City of Plano*, 202 F.3d 741, 745 (5th Cir. 2000); *Conner*, 209 F.3d at 797.

[102] *Id.*, citing *Davis v. City of N. Richland Hills*, 406 F.3d 375, 383 n. 34 (5th Cir. 2005).

[103] *Davis*, 406 F.3d at 383 .

[104] *Sanders-Burns*, 594 F.3d at 381, quoting *Davis*, 406 F.3d at 383.

[105] *Id.*, quoting *Davis*, 406 F.3d at 386 (quoting *Brown*, 219 F.3d at 462 (internal quotation marks omitted)).

[106] Rec. Doc. No. 22-1, pp. 7-8.

argument that Graves failed to train Arnold. Defendants argue that Plaintiff fails to put forth evidence which demonstrates inadequate training or supervision or that Graves inadequately screened Arnold prior to his hiring. Indeed, Defendants state: "There is no evidence of this."[107] Defendants also argue that there is no summary judgment evidence that any alleged failure to train caused the alleged constitutional violation, and Plaintiff has not shown how more or different training would have prevented the incident. Defendants further claim that, under applicable law, Plaintiff cannot use Graves' refusal to discipline Arnold for the incident as having "ratified" or "endorsed" Arnold's conduct.[108] Finally, Defendants argue that Plaintiff has presented no evidence that Graves acted with deliberate indifference to the rights of Plaintiff or any other citizens of Livingston Parish, claiming Plaintiff has failed to allege the required pattern of similar constitutional violations of untrained employees.

Plaintiff cites *Livermore v. Arnold*,[109] a case filed in the Middle District of Louisiana in 2010, for the proposition that Graves knew about Arnold's propensity for violence and the need for greater training and/or supervision. In *Livermore*, the court rejected similar arguments made here by the same defendants, Joel Arnold and Sheriff Willie Graves. Arnold was accused of falsely arresting and using excessive force against Frank Livermore, who allegedly objected to Arnold's order to leave his own property. The court ultimately

---

[107] *Id.* at p. 11.

[108] *Id.* at p. 12, citing *Fraire v. City of Arlington*, 957 F.2d 1268, 1278-79 (5th Cir. 1992).

[109] 10-507-JJB-SCR.

Case 3:12-cv-00306-SDD-SCR    Document 42    01/03/14    Page 29 of 50

denied the defendants' claims of qualified immunity finding that numerous fact issues precluded this determination. In the present case, Plaintiff has presented several letters written by Livermore to Sheriff Graves in 2009 regarding Livermore's incident with Arnold. Plaintiff claims Graves' inaction in light of this alleged notice amounts to deliberate indifference to Arnold's dangerous and illegal behavior.

Plaintiff also contends that Arnold's testimony regarding his injuries from a car accident in 2010 suggests that he needed more training and/or supervision. Arnold testified that after his car accident, he was required to use greater force than before to make an arrest or detain an individual: "I didn't do anything wrong or break any rules. I just did something I wouldn't normally do based on fact that I was scared that I wouldn't be able to take him as I would have normally taken him if I didn't have this problem."[110] Arnold further testified:

> A:    But what put me there, I guess that day, was the fact that I knew the next guy I came to that I wouldn't be able to do what I needed to, which is handle the situation in a less volatile manner with just physical arm strength versus me breaking out and having to tase somebody that I wouldn't normally have to tase.
>
> No offense to Greg, but he is a little guy. If he said I'm not going to jail, piss off; well, I would probably throw Greg threw [sic] that window, and then pick him up and put him in the car. That is what I would have done before this wreck. Does that make sense?[111]

In support of Plaintiff's claim for failure to train/supervise, he offers this testimony by Arnold:

---

[110] Rec. Doc. No. 30-9, p. 69.

[111] *Id.* at p. 70.

Case 3:12-cv-00306-SDD-SCR    Document 42    01/03/14    Page 30 of 50

A:      ...And physical fitness wise, I had a conversation, you know, with the chief deputy at the time and told them – you know, we have to do – twice a year, we have to do physical fitness test. And when my time came up the next one after that, I just told them flat out that there was no way I was going to be able to pass it. There was no way I was going to be able to do situps. Just wasn't going to happen.

So luckily something happened, I think we had some kind of disaster. Anyway, they skipped it, which was why I was able to stay on the road as long as I did. I didn't have to take the physical fitness test. And then the next one that came up was the election, and they let us skip it as a gift to us for our work on the election, so I was able to go that long without having to take that physical test.[112]

Plaintiff contends this testimony further supports his claim that the Defendants failed to properly train and/or supervise Arnold through Arnold's own acknowledgement and admission that he could not pass the physical fitness test as required; thus, Plaintiff argues he should not have been "on the road" at the time of his incident with Plaintiff. Further, Plaintiff contends this testimony is evidence that the Sheriff failed to follow the LPSO's policy and procedure of requiring physical fitness tests.

Plaintiff also cites evidence of lawsuits filed against Arnold for excessive force after the incident with Plaintiff. Plaintiff refers to the allegations in *Hoffpauir v. Arnold*, where Arnold has been accused of battery and false arrest in the course of responding to a claim of aggravated assault.[113] The *Hoffpauir* incident took place on August 6, 2011, less than three months after the incident giving rise to this lawsuit. Plaintiff cites to the deposition testimony of Deputy Perry Rushing, who was questioned about a situation where a

---

[112] *Id.* at p. 68, lines 11-25, p. 69, line 1.

[113] USDC MDLA, 12-403-JJB-SCR.

dashboard video camera recording showed Arnold beating a suspect with a baton after a general traffic stop.  Rushing testified that Arnold's "use of force could have been a problem for us."[114]  Plaintiff contends Arnold ultimately resigned from the LPSO after this incident involving the recording.

Considering the evidence in the record and the arguments by the parties, and applying the factors the Court must consider on this claim, the Court finds that Plaintiff has presented sufficient summary judgment evidence which establishes that genuine issues of material fact exist on the failure to train/supervise claim.  There is evidence in the record that complaints about similar conduct by Arnold, both before and after the incident in question, were reported and went unaddressed.  There is evidence in the record that Arnold (and perhaps several other officers) was not required to undergo the physical fitness test on at least two occasions.  There is also evidence in the record that after Arnold's automobile accident and injury, he used greater force than he had previously used when engaged in a traffic stop or similar circumstances.  A reasonable jury could conclude from the evidence in the record that there was  need for more or different training of Arnold.

The Court also finds there is enough evidence in the record that a reasonable jury could conclude that the Sheriff's failure to properly train/supervise Arnold was the cause of injuries to the Plaintiff.  Likewise, while the Court recognizes the burden to prove deliberate indifference is extremely high and requires far more than simple negligence, the Court finds that there is evidence in the record from which a reasonable jury could conclude

---

[114] Rec. Doc. No. 30-13, p. 63, lines 1-2.

that the Sheriff's actions and omissions constitute deliberate indifference.  Arnold's close relationship with Jason Ard, the disclosure of Arnold's previous problems in Lee County in his application, the complaints made to Arnold's supervisors about his alleged conduct in similar situations, and the failure of the LPSO to enforce compliance with its policy and procedure of requiring officers pass a physical fitness test, could constitute deliberate indifference.

Also, while the law is clear that in rare instances municipal liability can be based on a single incident which constitutes a policy, the Court finds that Plaintiff has introduced evidence that a reasonable jury could believe establishes a pattern of failing to properly train/and or supervise Arnold which amounts to a policy.  A claim for inadequate training requires that Plaintiff demonstrate a pattern of misconduct by Arnold; the Court finds that the record is replete with evidence of allegations of similar conduct by Arnold in similar circumstances as alleged herein which was allegedly left uncorrected by Arnold's supervisors.

In *Brown v. Bryan County*,[115] an arrestee brought a claim for damages against the reserve deputy sheriff under Section 1983 for excessive force, false arrest, and false imprisonment.  The Fifth Circuit held that the issue of the county's liability for use of excessive force by a reserve deputy, based on the county's failure to train, was for the jury.

A jury had found Sheriff Moore liable for failure to train reserve deputy Stacy Burns based on the manner in which Burns effectuated the arrest causing plaintiff to suffer severe

---

[115] *See* note 95, *supra*.

Case 3:12-cv-00306-SDD-SCR   Document 42   01/03/14   Page 33 of 50

knee injuries. The question raised on appeal was whether Bryan County could be held liable under *Monell v. New York City Dept of Social Services*[116] for plaintiff's injuries given the county's failure to train Burns. The Fifth Circuit stated: "We conclude that the evidence, given the standard of review of a jury verdict, fairly allowed the jury reasonably to conclude that Bryan County's sheriff, admittedly a policymaker, failed to train Burns in the light of facts demonstrating an obvious need to train him."[117] The court continued: "We think the jury reasonably concluded that, given the notice of the need to train Burns and that the consequences of the failure to train him were so obvious, that the County is culpable for its failure to train him. Furthermore, the evidence allowed a reasonable inference that the decision not to train Burns was the 'moving force' behind, i.e., directly caused, the injuries suffered by Brown. Given these conclusions, we hold that Brown established that Sheriff Moore's decision not to train Burns constituted a policy decision for which the County is liable under § 1983."[118]

The court noted facts from Burns' background which showed a significant need for training given his position. The Fifth Circuit stated, "[h]is record of having engaged in some inappropriate conduct before joining the force is undisputed."[119] The *Brown* court further stated that "his conduct for the short time that he had been on the force also suggested a

---

[116] 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

[117] 219 F.2d at 452.

[118] *Id.* (emphasis added).

[119] *Id.* at 454.

problem. Specifically, the jury reasonably could have concluded that he had an excessive number of 'takedown' arrests, similar to the one in which [plaintiff] was injured."[120]

Further, the court noted that "we focus on whether the failure to provide Burns training as an individual, and not whether the County had a policy of not training its deputies generally."[121]  "If *Monell* liability is to be imposed, it must be done on the grounds of the single decision by Sheriff Moore to require no training of Burns before placing him on the street to make arrests."[122] The Fifth Circuit held that:

> [T]he jury could have found that the failure to train Burns was a decision that amounted to a County "policy." First, Sheriff Moore was a policy maker who either could require training for Burns or not.  Furthermore, Moore's awareness of Burns' youth, inexperience, personal background, and ongoing arrest activities while with the department, along with the highly predictable risk of injury from the improper use of force by an untrained officer, provided sufficient notice to Moore of the need to train Burns so as to make his failure to require training a conscious decision.[123]

While the County insisted liability for failure to train could not attach from a single decision of a policymaker, the court found otherwise: "We think it is clear from the Court's decisions in *City of Canton*, 489 U.S. at 380 & 387, 109 S.Ct. 1197, and *Bryan County*, that, under certain circumstances, § 1983 liability can attach for a single decision not to train an individual officer even when there has been no pattern of previous constitutional

---

[120] *Id.* at 455.

[121] *Id.* at 457-58 (emphasis added).

[122] *Id.* at 458.

[123] *Id.*

Case 3:12-cv-00306-SDD-SCR   Document 42   01/03/14   Page 35 of 50

violations."[124]

Applying the reasoning of the Fifth Circuit in *Brown* court, the Court DENIES the defendant's the motion for summary judgment on the Plaintiff's claim of failure to train and/or supervise Deputy Arnold. For the same reasons, the multitude of disputed facts preclude Graves' motion for summary judgment on the individual capacity claims brought against him on the basis of qualified immunity.

## 2.    **Negligent Hiring/Retention**

Where there is a claim of negligent hiring, the Supreme Court has established two fundamental requirements for holding a municipality liable under Section 1983 for inadequate hiring policies.[125] First, the municipal policy must have been adopted with "deliberate indifference" to its known or obvious consequences.[126] Second, the municipality must be the "moving force" behind the constitutional violation.[127] For Defendants to be liable for hiring Arnold, the Court must find "that adequate scrutiny of his background would have led a reasonable supervisor to conclude that the plainly obvious consequence of hiring him" would have resulted in a situation like that alleged by the Plaintiff in this case.[128]

---

[124] *Id.* at 459 (emphasis added).

[125] *Hardeman v. Kerry County Tex.*, 244 Fed. Appx. 593, 596 (Aug. 8, 2007).

[126] *Snyder v. Trepagnier*, 142 F.3d 791, 795 (5th Cir. 1998).

[127] *Id.*

[128] *Hardeman*, 244 Fed. Appx. at 596 (*See Gros v. City of Grand Prairie*, 209 F.3d 431, 433-34 (5th Cir. 2000)("[D]eliberate indifference exists where adequate scrutiny of an applicant's background would lead a reasonable supervisor to conclude that the plainly obvious consequences of the decision to hire would be the deprivation of a third party's constitutional rights.")).

Even a showing of heightened negligence in hiring will not give rise to a constitutional violation.[129]

As to inadequate screening before hiring Arnold, Defendants claim Plaintiff has made only a "vague allegation" that Graves was aware that Arnold had previously engaged in serious misconduct as a Lee County deputy. Defendants assert Plaintiff failed to allege what constituted the "serious misconduct" or how the alleged "misconduct" was linked to the risk that hiring Arnold would lead to the constitutional violations Plaintiff has alleged. Defendants rely on Graves' deposition testimony that he did not know of any prior misconduct by Arnold, never investigated the Lee County employment, and had no knowledge of any dissatisfaction with Deputy Arnold at Lee County.[130] Defendants allege Plaintiff has offered nothing to dispute the evidence that Graves had no knowledge of any problem with hiring Arnold.

Plaintiff has presented evidence from Lee County, Florida, which reveals that Arnold had at least five disciplinary investigations, three of which involved Arnold allegedly using excessive force. The final complaint against Arnold in Lee County was not only substantiated, but according to the records, caused "the immediate revocation of Joel (Mick) Arnold's appointment as Deputy Sheriff of Lee County."[131] Portions of the report on Arnold state: "Deputy Arnold did completely lose control and behave in a manner that

_____

[129] *Gros*, 209 F.3d at 434.

[130] *Id.* at p. 14, citing Rec. Doc. No. 22-6, Deposition of Willie Graves, pp. 123, 125, & 147.

[131] *See* Rec. Doc. Nos. 30-2 & 30-3.

tarnished the image of the Lee County Sheriff's Office and exposed the Lee County Sheriff's Office to liability"; "Deputy Arnold has a problem in interpersonal communications with people on the street"; "he still behaved in such a manner as to have two separate Sergeants on two separate incidents, question his ability to deal with people in a professional manner"; and "It has become equally obvious that this behavior is part of Deputy Arnold's personality and is not likely to change for the better."[132]

At the time that Arnold was hired by Sheriff Graves, Graves' chief deputy was Jason Ard, the current Sheriff. Arnold testified in his deposition that he is Jason Ard's best friend and that Ard is married to his cousin.[133] Regarding the problems in Lee County, Arnold further testified as follows:

Q:      Did they ever ask you about this incident?

A:      Yes

Q:      What did they ask you?

A:      I never spoke – I don't really remember speaking to Sheriff Graves about it in detail. So I don't really know whether he asked or not. Jason of course knew about the entire incident from start to finish on a personal level before I had even applied to go work for Livingston Parish. I never tried to hide it. So it was open on my application as part of [sic] had happened. I believe that it was part of my questions that Deputy Overton placed to me as far as when we were discussing my being hired. But I think they gave it the effect that it was ten years prior and I was a young man, you know.[134]

---

[132] Rec. Doc. No. 30-2, pp. 1-2.

[133] Rec. Doc. No. 30-4, p. 36; 233-34.

[134] Rec. Doc. No. 30-4, Deposition of Joel Arnold, pp. 233, lines 11-25; p. 234, lines 1-4.

Plaintiff contends this evidence suggests the LPSO knew about Arnold's history in Lee County at the time of his hire.

Finally, Plaintiff presents evidence related to Arnold's application to work with the Springfield, Louisiana police department, which included a psychological/liability assessment.[135] Arnold's assessment was performed by Robert D. David, Ph.D., M.P., and the findings revealed that, although he received a "PASS," Arnold possessed "ELEVATIONS OF LIABILITY RISK" which required "training, supervision, and discipline."[136] Arnold was specifically found by Dr. David to be at increased risk for excessive use of force:

> **Excessive Force**: This candidate's approach to the liability assessment was similar to that of officers who have demonstrated excessive force or physically aggressive behaviors that are inappropriate. This category of liability usually involves a significant discrepancy between the level of resistance and the level of control necessary in a given encounter. These discrepancies may be the result of failure to accurately determine the level of resistance encountered or failure to de-escalate in a timely manner.[137]

The Court finds that there are genuine issues of material fact regarding the negligent hiring/retention of Arnold. While the jury could certainly believe Sheriff Graves' testimony that he had no knowledge of Arnold's previous history of misconduct in Lee County, Florida, the jury could also reasonably believe that, given Arnold's close friendship with then-Chief Deputy Ard in combination with Arnold's own testimony that his issues in Lee County were

---

[135] As explained later in this opinion, the Court will not consider this evidence in ruling on the motion for summary judgment by Defendants Graves and Ard.

[136] Rec. Doc. No. 30-14, p. 1.

[137] *Id.* at p. 4.

disclosed on his application to work for the LPSO, Sheriff Graves knew or should have known that Arnold allegedly had a propensity for violence and using excessive force.  In sum, there is sufficient evidence in the record that a jury could reasonably conclude that adequate scrutiny of Arnold's background would have led a reasonable supervisor to conclude that the plainly obvious and highly predictable consequence of hiring Arnold would result in a situation like the one alleged by Plaintiff.   Defendants' contentions that Plaintiff's arguments and evidence are "vague" or "conclusory" are simply not supported by the record.  The Court also finds that there is evidence in the record such that a reasonable jury could conclude that the LPSO's failure to properly train and supervise Arnold was the "moving force" behind Plaintiff's alleged constitutional violation.  Thus, the official capacity motion for summary judgment on this claim is DENIED.  The Court also finds that the factual disputes on this claim preclude a determination of Graves' qualified immunity in his individual capacity.

### 3.    Defendants' Motion to Strike Plaintiff's Evidence

In their *Reply* memorandum, Defendants contend Plaintiff offers "prior unsupported and unproven claims made against Deputy Arnold in an attempt to paint him as a violent, rogue deputy."[138]  Defendants also contend Plaintiff's opposition "presents misleading and irrelevant arguments that are included for no other purpose than to create an illusion that Deputy Arnold has a violent past."[139]   Defendants also state Plaintiff relies "only on a

---

[138] Rec. Doc. No. 35, p. 1.

[139] *Id.*

manufactured history of Deputy Arnold."[140]

The Defendants take exception to Plaintiff's reference to the other lawsuits brought against Arnold, arguing that there has never been a determination in any lawsuit that Arnold acted unreasonably or violated anyone's constitutional rights. Defendants state that the allegations have either never been adjudicated or have been adjudicated in Arnold's favor.[141] Defendants contend the *Livermore* case was settled "to avoid the continued litigation costs" without any admission of fault by the defendants.[142] Defendants also claim that Plaintiff cannot use allegations in one other lawsuit (*Hoffpauir*) to support his claims in this case because the incident giving rise to that lawsuit occurred after the incident in this case. Defendants move to strike any argument and evidence relating to other suits, arguing they provide little or no probative value and are substantially outweighed by the risk of prejudice to Deputy Arnold and Sheriff Graves. Defendants also move to strike the evidence regarding the psychological assessment performed by Dr. David.

Defendants also claim that Plaintiff cannot use other lawsuits to show Arnold has a habit of using excessive force because, "[T]o offer evidence of a habit, a party must at least demonstrate 'a regular practice of meeting a particular kind of situation with a specific type of conduct.'"[143] Defendants further argue that because there has a never been an

---

[140] *Id.*

[141] *See Rice v. ReliaStar*, 11-CV-BAJ-SCR, where the Court granted summary judgment in favor of the defendants.

[142] *Id.* at p. 2.

[143] Rec. Doc. No. 35, p. 4, quoting *Jones v. S. Pac.R.R.*, 962 F.2d 447, 449 (5th Cir. 1992)(quoting *Reyes v. Missouri Pac. R. Co.*, 589 F.2d 791, 794 (5th Cir. 1979).

adjudication that Arnold used excessive force, Plaintiff cannot offer the proposed evidence under Rule 406 of the Federal Rules of Evidence.

However, the Court notes that the rule does not require the evidence be an **adjudication** that Arnold has committed the alleged type of conduct in the past, simply evidence that when faced with similar circumstances, Arnold allegedly responds in similar fashion to that alleged by Plaintiff. The Court also finds the evidence of subsequent allegations against Arnold is admissible under the Federal Rules of Evidence and the facts of this case. In *Rice v. ReliaStar Life Insurance Company*,[144] cited previously by Defendants as one lawsuit resolved in Arnold's favor, Arnold and Graves had moved to strike allegations in the *Complaint* relating to the *Livermore* case and the letters sent from Frank Livermore to Sheriff Graves. Finding such a motion to be premature at the pleadings stage, Magistrate Judge Noland denied the motion, holding that:

> Allegations in that regard could certainly be relevant to plaintiffs' contentions that Sheriff Graves was negligent in hiring, retaining, training, and/or supervising Deputy Arnold given his alleged history of violence and misconduct. Moreover, as defendants concede in their supporting memorandum, such allegations could also be relevant to establishing Deputy Arnold's state of mind at the time of the incident in question. [145]

The Court is also guided by the decision in *Montgomery v. Boutee*, where a prison official accused of using excessive force against an inmate objected to a correspondence subsequent to the incident giving rise to the lawsuit which found a "pattern of misconduct"

---

[144] No. 11-44, 2011 WL 1168520, *2 (M.D. La. Mar. 29, 2011).

[145] *Id.* at *3 (footnotes omitted)(emphasis added).

on the part of the official.[146]   The defendants argued the document was hearsay and irrelevant because it dealt with events occurring after the date of the incident complained of by the plaintiff.[147]

The court flatly rejected this argument finding, "[f]irst, the referenced document fits within a recognized exception to the hearsay rule set forth in Rule 803(8) of the Federal Rules of Civil Procedure."[148]   The court further held that, "although evidence of other bad acts committed by a defendant is not generally admissible to prove the character of that person or to show that he acted in conformity with such bad character on a particular occasion, such evidence may be admissible for other purposes, as for example, to show intent."[149]   The court cited *United States v. Beechum*,[150] where the Fifth Circuit construed Rule 404(b) in light of the other Rules of Evidence and held that this Rule mandates a two-step analysis: "'First, it must be determined that the extrinsic evidence offense is relevant to an issue other than the defendant's character. Second, the evidence must possess probative value that is not substantially outweighed by its undue prejudice and must meet the other requirements of Rule 403.'"[151] The *Montgomery* court also noted that *Beechum* explained how extrinsic offenses may be relevant to the proof of intent behind a

---

[146] No. 07-0094, 2010 WL 2545652 (M.D. La. June 21, 2010).

[147] *Id.*

[148] *Id.* at *2.

[149] *Id.*, citing F.R.E. 404(b).

[150] 582 F.2d 898 (5th Cir.1978)( *en banc* ), *cert. denied*, 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979).

[151] *Montgomery*, at *2, quoting *Beechum*, 582 F.2d at 911.

Case 3:12-cv-00306-SDD-SCR   Document 42   01/03/14   Page 43 of 50

subsequent action:

> [T]he relevancy of the extrinsic offense derives from the defendant's indulging himself in the same state of mind in the perpetration of both the extrinsic and the charged offense. The reasoning is that because the defendant had unlawful intent in the extrinsic offense[s], it is less likely that he had lawful intent in the present offense.[152]

The court also stated that "[w]here extrinsic evidence of other offenses is sought to be introduced, its relevance is a function of its similarity to the offense charged and, for purposes of determining relevancy, ' "a fact is similar to another only when the common characteristic is the significant one for the purposes of the inquiry at hand." ' "[153] "To be sufficiently similar, 'other crimes' evidence in a lawsuit alleging excessive force by law enforcement officers must typically have at least some bearing on how an officer has treated other detainees while carrying out his duties...."[154] Applying this standard, the court held as follows:

> [T]he Court finds that [the] subject document is admissible in this case. The referenced correspondence outlines specific instances of misconduct and concludes, after an investigation, that defendant Terry Albright displayed a "pattern of misconduct", including the failure to follow EHCC and Department regulations regarding use of force ... In addition, the referenced document reflects that defendant Albright "routinely used excessive force with inmates", including, as alleged in the instant case, the use of chemical agents. Although the incidents detailed in the correspondence occurred after the incident complained of by the plaintiff herein, this does not preclude their

---

[152] *Id.*, quoting *Beechum*, 582 F.2d at 911.

[153] *Id.*, quoting *Beechum*, 582 F.2d at 911 (quoting Stone, *The Rule of Exclusion of Similar Fact Evidence: England*, 46 Harv.L.Rev. 954 (1933)).

[154] *Id.*, citing *Ellis v. Packnett*, No. 06-33, 2007 WL 2688540 (S.D. Miss., Sept. 10, 2007)(quoting *Mazloum v. District of Columbia Metropolitan Police Dept.*, 517 F.Supp.2d 74 (D.C. 2007))(internal quotation marks omitted).

admission. *See United States v. Beechum, supra* ("The principles governing extrinsic offense evidence are the same whether that offense occurs before or after the offense charged."). Moreover, the reported incidents are relatively close in time to the incident complained of, with one occurring within approximately 3 months and with the second occurring within approximately 8 months thereof. In addition, whereas the reported incidents were noted to have involved inmates with mental health problems, the Court finds that **the incidents are sufficiently similar to the incident complained of by the plaintiff to be probative of the defendant's intent.** Finally, the referenced correspondence, placed in the defendant's personnel file and written as it was to detail the investigation conducted by prison officials and to justify the termination of the defendant's employment, has probative value which is not outweighed by its prejudicial effect. Accordingly, the referenced document shall be allowed. [155]

Likewise, the Court finds the subsequent lawsuit(s) and evidence surrounding Arnold's resignation are admissible under this standard. The Plaintiff has the burden of establishing that Arnold has a pattern of engaging in similar conduct that was known, or should have been known, to Sheriff Graves both prior to his hiring and in the alleged failure to train and/or supervise Arnold. This evidence of similar conduct in similar situations, both before and after the incident with Plaintiff, is evidence of a habit or pattern and is admissible for the same reasons as set forth in *Montgomery*.

Therefore, the Court DENIES the motion to strike evidence of other lawsuits and

---

[155] *Id.* (*See Carson v. Polley, 689 F.2d 562* (5th Cir.1982) (admitting performance evaluation of prison official which documented bad temper and a tendency to get in arguments with inmates, where the official was alleged to have inflicted excessive force upon an arrestee). *See also O'Neill v. Drzeminski*, 839 F.2d 9 (2nd Cir.1988) (affirming admission of prior § 1983 judgments against officer that were based on his prior unlawful arrest and excessive force); *Eng v. Scully*, 146 F.R.D. 74 (S.D.N.Y.1993) (admitting official incident reports documenting prison officer's use of excessive force on other occasions); *Lombardo v. Stone*, 2002 WL 113913 (S.D.N.Y.2002) (finding disciplinary file of state mental hospital employee—where it documented employee's failure to intervene in a patient's prior beating—to be probative of the employee's intent but to be inadmissible because overly prejudicial); *Ismail v. Cohen*, 706 F .Supp. 243 (S.D.N.Y.1989), affirmed, 899 F.2d 183 (2nd Cir.1990) (admitting evidence that police officer falsely arrested and beat another citizen))(footnotes omitted)(emphasis added).

Case 3:12-cv-00306-SDD-SCR   Document 42   01/03/14   Page 45 of 50

testimony relating to Arnold's resignation. The Court reserves Defendants' right to file a motion *in limine* with respect to the psychological evaluation performed by Dr. David for the Springfield Police Department. The Court did not consider this evidence when ruling on the motions at issue in this opinion; however, the Court is not willing to strike such evidence without affording Plaintiff an opportunity to respond to its relevance and admissibility at trial.

In sum, applying the law and applicable jurisprudence to the facts of this case, the Court finds that there are genuine issues of material fact as to Plaintiff's claims of negligent hiring/retention and failure to train and/or supervise against the LPSO. The Court is not giving more weight to Plaintiff's evidence or implying that a jury will necessarily believe Plaintiff's allegations and evidence; however, because the Court must consider the evidence and record in the light most favorable to the Plaintiff and resolve any inferences in Plaintiff's favor, summary judgment on these claims is DENIED, with the exception that the individual capacity claims brought against Sheriff Ard are dismissed because there are no allegations or evidence of his personal involvement as a policy-maker at the time for the alleged negligent hiring/retention and failure to train/supervise claims. As to both claims, the Court finds that genuine issues of material fact preclude a determination by the Court that Graves is entitled to qualified immunity for the claims brought against him in his individual capacity under Section 1983. There are genuine issues of material fact in dispute as to whether Graves' actions were objectively reasonable in light of the legal rules clearly established at the time of the actions.

### 4. State Law Claims against Graves and Ard

Defendants also contend that, if the federal claims are dismissed against them, the state law claims must follow suit. However, the Court has not dismissed the federal claims against these Defendants. Defendants alternatively rely on the alleged immunity provided under La. R.S. § 9:2798.1, which states:

A. As used in this Section, "public entity" means and includes the state and any of its branches, departments, offices, agencies, boards, commissions, instrumentalities, officers, officials, employees, and political subdivisions and the departments, offices, agencies, boards, commissions, instrumentalities, officers, officials, and employees of such political subdivisions.

B. Liability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties.

C. The provisions of Subsection B of this Section are not applicable:

(1) To acts or omissions which are not reasonably related to the legitimate governmental objective for which the policymaking or discretionary power exists; or

(2) To acts or omissions which constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct.

In their memorandum, Defendants cite only paragraph A from the above statute; however, a reading of paragraph C(2) clearly states that immunity does not apply to acts or omissions which constitute "intentional, willful, outrageous, reckless, or flagrant misconduct." Plaintiff's state law claims against these Defendants allege not just the

Case 3:12-cv-00306-SDD-SCR   Document 42   01/03/14   Page 47 of 50

Defendants' negligence in hiring, retaining, training and supervising Arnold but also that the Defendants are vicariously liable for the alleged conduct of Arnold which is encompassed by the definitions of malicious, intentional, willful, outrageous, reckless and flagrant. In *McIntosh v. McElveen*, the Louisiana Third Circuit held that a deputy for the Calcasieu Parish Sheriff's Office (CPSO) was negligent in responding to a call for help from another deputy by failing to warn the other deputy of shots fired within his known location.[156] The court held:

> Section (C)(2) of Louisiana Revised Statute 9:2798.1(emphasis added) specifically exempts from immunity "acts or omissions which constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct." Deputy Patrick knew of a shooting for over three minutes before Deputy McIntosh was killed. She should have known that he was in the direct vicinity of the shooting for almost two minutes before he was fatally shot. We find Deputy Patrick's complete and utter failure to warn Deputy McIntosh of a shooting in his area to be an outrageous, reckless, and flagrant omission, making her actions, **and therefore, the actions of the CPSO, exempt from the immunity offered by Louisiana Revised Statutes 9:2798.1**. Furthermore, "**[w]hen the government acts negligently for reasons unrelated to public policy consideration, it is liable to those it injures**." *Gregor*, 851 So.2d at 968 (citing *Archon v. Union Pac. R.R.*, 94-2728, (La.6/30/95), 657 So.2d 987, 996).[157]

Clearly, a reasonable jury could resolve the factual disputes in this case in favor of Plaintiff and find the LPSO vicariously liable for the torts allegedly committed by Arnold, and could also conclude that the LPSO was negligent in its hiring, retention, training, and supervision of Arnold for the reasons previously set forth herein. Accordingly, Defendants' motion for

---

[156] 2004-1041 (La. App. 3 Cir. 2/2/05), 893 So.2d 986.

[157] *Id.* at 993-94 (footnote omitted)(emphasis added).

summary judgment on the state law claims is DENIED.

## III.    CONCLUSION[158]

For the reasons set forth above,

Plaintiff's *Motion for Partial Summary Judgment Against Joel Arnold*[159] on the claims of battery and false arrest and false imprisonment are DENIED.

Defendant Arnold's *Motion for Partial Summary Judgment*[160] is GRANTED in part and DENIED in part, as follows:

Defendant Arnold's *Motion for Partial Summary Judgment* of the Plaintiff's official capacity claims against Arnold GRANTED;

Defendant Arnold's *Motion for Partial Summary Judgment* of the Plaintiff's claims for failure to provide medical treatment and intentional infliction of emotional distress are GRANTED;

Defendant Arnold's *Motion for Partial Summary Judgment* of the Plaintiff's claims of Unlawful Seizure and Detention are DENIED;

Defendant Arnold's *Motion for Partial Summary Judgment* of the Plaintiff's claims of Excessive Force is DENIED;

Defendant Arnold's *Motion for Partial Summary Judgment* on the grounds of Qualified Immunity is DENIED;

---

[158] The Court has considered all of the contentions of the parties whether or not specifically addressed herein.

[159] Rec. Doc. No. 18.

[160] Rec. Doc. No. 21.

Defendant Arnold's *Motion for Partial Summary Judgment* on the availability of Punitive Damages is DENIED;

Defendant Ard's *Motion for Partial Summary Judgment*[161] to dismiss individual capacity claims is GRANTED;

Defendants Graves and Ard *Motion for Partial Summary Judgment* in all other respects is DENIED; and

Defendants' motion for summary judgment to dismiss Plaintiff's state law claims is DENIED.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana, on <u>January 3, 2014</u>.


*Shelly D. Dick*
_____
**JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[161] Rec. Doc. No. 22.